```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JANICE DIVEN,

     Plaintiff and
     Counter Defendant,

v.                        //    CIVIL ACTION NO. 1:11CV27
                                     (Judge Keeley)

FAIRMONT GENERAL HOSPITAL,
INC.,

     Defendant, Counter Claimant,
     Third Party Plaintiff,
     and Counter Defendant.

KIM CHEUVRONT, TARA
STEVENS, DONNA CASSELLA, and
FAIRMONT MANAGEMENT SERVICES
ORGANIZATION, INC.,

     Defendants and
     Counter Defendants.

DONALD G. MYERS,

     Third-Party Defendant
     and Counter Claimant.
```

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the question whether to remand this case to state court based on the absence of a federal question. For the reasons that follow, the Court concludes that remand is appropriate and **REMANDS** this case to the Circuit Court of Marion County, West Virginia.

### I. FACTUAL BACKGROUND

The plaintiff, Janice Diven ("Diven"), filed a complaint in the Circuit Court of Marion County, West Virginia, on February 4,

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**                          1:11CV27

**MEMORANDUM OPINION AND ORDER**

2011, alleging that the defendant, Fairmont General Hospital ("FGH"), had wrongfully terminated her employment. Diven, a fifty-three-year-old supervisor in FGH's occupational health clinic, worked for FGH for twenty-two years before being fired on June 30, 2010.

The factual background relevant to Diven's termination began with an incident involving her son, Donald Myers ("Myers"). Myers had a romantic relationship with Diven's coworker, Brenda Perkins ("Perkins"), an employee of an FGH subsidiary, Fairmont Management Services Organization ("FMSO"). According to Diven, after the couple broke up in June 2010, rumors began to circulate at work about the failed relationship and Diven's alleged mistreatment of Perkins. As a result, Diven's work relationships soured and her requests to management to intervene were ignored.

Around the same time, another FMSO employee, Donna Cassella ("Cassella"), accused Diven of adulterating a drug test for Myers. As a condition of his employment at a local energy company, Myers was drug tested at FGH's clinic in February, 2010. Cassella later alleged that Diven had threatened to force Perkins out of her relationship with Myers if Perkins did not help Diven adulterate the test. FGH fired Diven shortly after these accusations surfaced and replaced her with Cassella, who is in her forties. Diven denied

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**                    **1:11CV27**

**MEMORANDUM OPINION AND ORDER**

the accusations and alleged that Cassella conspired with Perkins to manufacture the story.

Diven also claimed that FGH's management failed to follow the written disciplinary procedures in her employment contract prior to firing her and, despite her years of experience and previously spotless record, replaced her with a younger, less experienced worker. Although she pled no specifics, Diven further alleged that FGH did not take disciplinary action against younger employees who had committed similarly serious infractions.

## II. PROCEDURAL HISTORY

The complaint alleged a number of claims under West Virginia common law, including breach of contract, breach of unilateral contract, interference with a business relationship, hostile work environment, intentional infliction of emotional distress, defamation, damage to credit and personal relations, and retaliatory discharge. It also asserted claims of disparate treatment, discriminatory treatment, and employment discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and W. Va. Code § 5-11-9, as well as a claim for wrongful discharge in violation of public policy under W. Va. Code

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**  1:11CV27

**MEMORANDUM OPINION AND ORDER**

§ 5-11-2. Finally, the complaint sought class action certification under W. Va. R. Civ. P. 23.

On March 11, 2011, the defendants removed the case to this Court pursuant to 28 U.S.C. § 1331, citing Diven's federal claims under the ADEA and Title VII. On March 18, 2011, the defendants filed motions to dismiss these claims, which the Court granted on May 4, 2011. Given the dismissal of the plaintiff's Title VII and ADEA claims for failure to exhaust administrative remedies, on its own motion the Court ordered the parties to brief whether any federal cause of action remained, focusing specifically on whether the defendants' contention that § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA") preempted certain of the plaintiff's state-law claims.

### III. LEGAL ANALYSIS

Section 510 of ERISA prohibits discharge of, or discrimination against, an employee benefit plan participant "for exercising any right to which he is entitled under the provisions of an employee benefit plan." 29 U.S.C. § 1140. Section 502(a)(3) provides a cause of action to such a plan participant, and § 502(e)(1) gives federal courts exclusive jurisdiction over such claims. 29 U.S.C. § 1132. Here, it is undisputed that Diven was a beneficiary of an ERISA pension plan while employed by FGH, and the defendants allege that,

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**  1:11CV27

**MEMORANDUM OPINION AND ORDER**

although she did not plead them as such, Diven's wrongful termination claims actually assert a cause of action under § 510 of ERISA. Specifically, they contend that Diven's complaint alleges that FGH's decision to fire her was motivated, at least in part, by a desire to interfere with her pension rights under the ERISA plan. If true, Diven's wrongful termination claims are preempted by § 510, and this Court has original jurisdiction under the "complete preemption" exception to the well-pleaded complaint rule.

**A.    ERISA Complete Preemption**

Typically, a determination of whether a defendant may remove a case pursuant to § 1331 "arising under" jurisdiction turns on the "well-pleaded complaint" rule. The existence of a federal defense normally does not create § 1331 jurisdiction. There is an exception to this rule, however: "When a federal statute wholly displaces the state law cause of action through complete preemption, the state claim can be removed." Aetna Health, Inc. v. Davilla, 542 U.S. 200, 207 (2004) (internal quotation marks and citations omitted).

ERISA is one of those statutes with such preemptive effect. Congress enacted ERISA "to provide a uniform regulatory regime over employee benefit plans." Id. at 208. ERISA § 502(a) is an integrated enforcement mechanism designed to accomplish that purpose by superceding state law remedies for employees seeking to

5

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**                1:11CV27

**MEMORANDUM OPINION AND ORDER**

enforce their benefits plans. "Therefore any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted." Id. Consequently, "causes of actions within the scope of the civil enforcement provision of § 502(a) [are] removable to federal court." Id. at 209.

Aetna established a two-pronged test to determine whether a cause of action is completely preempted by ERISA:

> [(1) the plaintiff] could have brought his claim under ERISA § 502(a)(1)(B), and . . .
> [(2)] there is no other independent legal duty that is implicated by the defendant's actions . . . .

542 U.S. at 210.

### 1.   *ERISA Claim*

For ERISA complete preemption to apply, the first prong of the Aetna test requires that the plaintiff could have brought her claim under ERISA's civil enforcement provision, § 502(a). Id. at 201. The defendants argue that Diven could have brought her claim under ERISA's anti-discrimination provision, § 510, which is enforced through § 502(a). Section 510, in pertinent part, renders it unlawful for

> any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**  1:11CV27

**MEMORANDUM OPINION AND ORDER**

the attainment of any right to which such participant may become entitled under the plan . . . .

The seminal case addressing this issue, and the case on which the defendants primarily rely, is <u>Ingersoll-Rand Co. v. McClendon</u>, 498 U.S. 133 (1990). In <u>McClendon</u>, the plaintiff's employer fired him, citing a companywide reduction in force. McClendon sued the company in state court, "alleging that his pension would have vested in another four months and that a principal reason for his termination was the company's desire to avoid making contributions to his pension fund." <u>Id.</u> at 135-36.

In finding that ERISA completely preempted the plaintiff's claim, the Supreme Court held that "McClendon's claim falls squarely within the ambit of ERISA § 510." <u>Id.</u> at 143. The Court explained that "[b]y its terms, § 510 protects plan participants from termination motivated by an employer's desire to prevent a pension from vesting" and that it should be enforced through § 502(a). <u>Id.</u>

Although the defendants argue that Diven's complaint alleges FGH's decision to fire her was motivated by a desire to interfere with her rights under an ERISA pension plan, the Fourth Circuit has held that "a § 510 plaintiff must prove specific intent by defendants to interfere with [her] pension rights." <u>Conkwright v. Westinghouse Elec. Corp.</u>, 933 F.2d 231, 238 (4th Cir. 1991). In

7

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**                             **1:11CV27**

**MEMORANDUM OPINION AND ORDER**

Conkwright, our court of appeals emphasized that, when an employer terminates an employee, incidental effects on that employee's pension benefits are not sufficient to establish that an employer's "principal reason" for the termination was to avoid contributing to a pension fund:

> ERISA guarantees that no employee will be terminated where the purpose of the discharge is the interference with one's pension rights. Consequently, it is necessary to separate the firings which have an incidental, albeit important, effect on an employee's pension rights from the actionable firings, in which the effect of the firing on the employer's pension obligation was a motivating factor in the firing decision. . . . An effective way of making the necessary separation is to require plaintiffs to demonstrate specific intent on the part of the employer to interfere with the employee's pension rights.

Id. at 238-39.

Here, the parties properly have focused their arguments on whether Diven's complaint has alleged that the "principal reason" for her termination was FGH's "specific intent" to interfere with her pension rights. A careful review of the complaint establishes that it does not do so, but rather alleges that Diven was terminated with a retaliatory purpose and because of her age, not with the "specific intent" to avoid paying her pension.

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**                   **1:11CV27**

**MEMORANDUM OPINION AND ORDER**

The defendants nevertheless contend that FGH's desire to interfere with Diven's pension benefits was a motivating factor[1] and rely on four paragraphs in the complaint to support their argument:

> 42. Ms Diven believes she was forcibly terminated due to her age, especially given that she was approaching pension qualification . . . .
>
> . . .
>
> 59. Ms Diven, as a fifty-three year old employee of Defendant FGH, nearing retirement age and her pension, was therefore treated in a disparate manner and was subjected to Defendant FGH's unfair policies and practices insofar as she was treated in an unequal manner and unlike younger employees similarly situated with Defendant FGH.
>
> . . .
>
> 65. As a result of Managerial Defendants' enforcement of employment policies, procedures, and practices, Ms. Diven was unjustly and discriminatorily deprived of equal employment opportunities, advancement, wage gain pension, and other opportunities and benefits.
>
> . . .
>
> 67. . . . Ms. Diven has been, is being, and will be deprived of income in the form of wages and prospective retirement benefits, and other benefits, promotion opportunities, and job assignments due to her as an employee, but denied because of her age and in an amount

---

[1] The defendants suggest that an employer's intent to interfere with pension benefits must only be <u>a</u> motivating factor, rather than <u>the</u> motivating factor, citing <u>Conkwright</u> as support. As explained above, however, <u>Conkwright</u> actually supports a much different conclusion: that the employer must have specifically intended to interfere and that any incidental effects on employee's pension benefits do not establish grounds for preemption. <u>See</u> 933 F.2d at 238-39.

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**  1:11CV27

**MEMORANDUM OPINION AND ORDER**

to be determined.

When considered both individually and also within the totality of Diven's complaint, however, these paragraphs do not evince a contention by Diven that FGH intended to interfere with her rights under her ERISA plan. See Conkwright, 933 F.2d at 238. Rather, they are merely descriptive of Diven's age and her potential damages. Paragraph 42, which includes the dependent clause "especially given that she was approaching pension qualification," might begin to suggest such intent were it representative of the complaint as a whole. In point of fact, however, when considered in its totality, the complaint alleges that FGH fired Diven due to her age or for some retaliatory purpose, but never avers that interfering with Diven's pension benefits was a "principal reason" for her termination. See McClendon, 498 U.S. at 135-36. Therefore, the Court finds that Diven has not stated a claim under ERISA § 510.

When a defendant's actions fail to create an ERISA cause of action, the Fourth Circuit has held that the plaintiff's claims are not preempted. In King v. Marriott International, Inc., for example, the court stated:

> Because none of [the plaintiff's] actions are protected under § 510, the only potentially relevant provision, ERISA does not provide a federal cause of action for [the plaintiff's] allegations. Consequently, her state wrongful discharge claim is not completely preempted, and removal of her claim was inappropriate.

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**  1:11CV27

**MEMORANDUM OPINION AND ORDER**

337 F.3d 421, 428 (4th Cir. 2003). Consequently, because Diven does not have an ERISA claim, the first prong of Aetna is not met.

### 2. *Independent Legal Duty*

In addition to the failure to plead an ERISA claim, Diven's complaint also fails to satisfy the second prong required under Aetna for preemption, that "there is no other independent legal duty that is implicated by a defendant's actions . . . ." 542 U.S. at 201. In Aetna, the Supreme Court explained that, when "interpretation of the terms of the [plaintiffs'] benefit plans forms an essential part of their [] claim" and when the defendant's liability exists only due to its administration of that plan, no independent legal duty exists. Id. at 213. Only then is the second requirement for ERISA preemption met. In Aetna, the plaintiffs sued their health maintenance organization pursuant to state health care liability law for its alleged failure to exercise ordinary care in the handling of health care coverage decisions. The Court held that ERISA completely preempted those state law claims because the state law's duty of ordinary care was not an "independent legal duty;" in other words, the defendant's liability under state law derived "entirely from the particular rights and obligations established by the benefits plans." Id.

11

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**                      **1:11CV27**

**MEMORANDUM OPINION AND ORDER**

Here, the duties implicated by Diven's state law claims are independent of any duties imposed by her ERISA pension plan. Unlike the plaintiffs in Aetna, Diven has not alleged a breach of any duty the defendants owed her under her pension plan, but rather a breach of the duty they owed under her employment contract. See id. Consequently, because Diven's complaint relies on a legal duty independent of any duty derived from her pension plan, the second prong of Aetna is not met and her claim is not preempted.

In summary, because Diven's complaint satisfies neither of the requirements for complete preemption under Aetna Health, Inc. v. Davilla, the Court finds that her claims are not preempted under ERISA. See 542 U.S. at 210.

**B.  Supplemental Jurisdiction**

Although original jurisdiction under ERISA is lacking, the Court must also consider whether, under the doctrine of supplemental jurisdiction, it should exercise its discretion in favor of keeping this case. Where, as here, a complaint no longer includes a federal claim and diversity does not exist between the parties, a court has broad discretion to determine whether to keep a case with only state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 351 (1988).

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**　　　　　　　　　　**1:11CV27**

**MEMORANDUM OPINION AND ORDER**

　　Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

A court should also consider the principles of economy, fairness, and comity in making this determination. Cohill, 484 U.S. at 357.

　　Here, the claims over which the Court had original jurisdiction have been dismissed and it may properly decline to exercise supplemental jurisdiction since the remaining claims arise solely under West Virginia law. See 28 U.S.C. § 1367(c); Cohill, 484 U.S. at 351. Moreover, this action is still in its earliest stages, no trial or pretrial dates having been set and no discovery having been undertaken. The principles of economy, convenience, fairness, and comity favor remand inasmuch as, at bottom, Diven's complaint alleges only state law claims with no federal defense. See Cohill, 484 U.S. at 357. The Court, thus, within its reasonable discretion declines to exercise supplemental jurisdiction over this matter.

**DIVEN v. FAIRMONT GENERAL HOSPITAL, et al**                              **1:11CV27**

**MEMORANDUM OPINION AND ORDER**

**IV. CONCLUSION**

For the reasons stated, the Court **REMANDS** the case to the Circuit Court of Marion County, West Virginia.

The Court directs the Clerk to transmit copies of this Order to counsel of record.

DATED: November 23, 2011

```
                              /s/ Irene M. Keeley
                              IRENE M. KEELEY
                              UNITED STATES DISTRICT JUDGE
```